IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DARRIEL E. BROWN, as Administrator                                                          PLAINTIFF
for the ESTATE OF TERREN J. BROWN,
Deceased

v.                                    No. 4:05CV00913 JLH

JOSH SCHERREY, Individually and In His
Official Capacity as a Police Officer in and for
Little Rock; DENNIS BALL, Individually and
In His Official Capacity as a Police Officer in and
for Little Rock; and CITY OF LITTLE ROCK                                            DEFENDANTS

## OPINION AND ORDER

Darriel E. Brown, as administrator for the estate of Terren J. Brown, has brought suit against Josh Scherrey and Dennis Ball, both individually and in their official capacities as police officers in and for the City of Little Rock, and the City of Little Rock. Pursuant to 42 U.S.C. § 1983, Brown alleges that the defendants deprived him of rights guaranteed him by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, specifically his rights to due process and to be free from excessive force. Brown further alleges that the defendants committed the state law offenses of negligence and wrongful death. Brown seeks to recover compensatory and punitive damages against the defendants as well as costs and attorney's fees. The defendants have moved for summary judgment. For the following reasons, the motion for summary judgment is granted.

I.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party carries its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). Furthermore, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356. A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552.

**II.**

On June 30, 2002, at approximately 2:30 a.m., Germaine Bennett placed a 911 call to report a burglary in his home at 1611 College Street in Little Rock. Sergeant Dennis Ball and Officer Josh Scherrey were the first and second officers to respond and arrive on the scene, respectively. As Ball was en route to the scene, the call was upgraded to an assault in progress because the 911 operator had heard someone in the house stating "I'm going to kill you" or words to that effect. As Scherrey was en route to the scene, Communications advised that shots had been fired at the residence.

As Ball approached the house, he could hear that a disturbance was going on inside and then

at the rear of the house. When Ball looked in that direction, he spotted a naked man who was bleeding from the neck and running as fast as he could in Ball's direction. When Ball could not get the man to stop or show his hands after ordering him to, Ball fired two shots in his direction as he was taking cover, both of which missed. After the shots were fired, the man dropped to the ground, and Ball was able to approach him. The man informed Ball that he had been shot and that the person who had shot him was still in the house. It was at this time that Scherrey arrived at the scene.

Ball instructed Scherrey to secure the man on the ground while he went inside the home. Ball began working his way through the house with his flashlight as his only source of light. When he arrived in the kitchen, he first encountered a significant amount of blood and then a suspect coming out of the front bedroom. According to Ball, the suspect was wearing an orange ski mask and had a silver handgun in his hand. Immediately, the suspect began running toward the back of the house, which was also the area where Ball had left Scherrey to secure the man on the ground. Ball was unaware of Scherrey's situation at the time, so he began yelling as loud as he could that there was an armed gunman trying to escape out of the back of the house.

While Ball was inside the residence, Scherrey, standing at the rear of the house, heard at least one gunshot from a small caliber weapon from inside the house, which caused Scherrey to fear for Ball's life. Then, having heard Ball's warnings about the gunman coming to the rear of the house, Scherrey backed down the back steps and went to the corner of the house. At that point, he heard knocking and scuffling noises that were elevated where a window would be. As he trained his flashlight and weapon toward the sound, he saw a subject in dark clothing falling through the air. The subject, who was later identified as Terren J. Brown, landed in the grass in front of Scherrey in a crouched position. According to Scherrey, he could see Brown's face, and Brown pointed a

silver gray handgun directly at Scherrey. At that moment, Scherrey fired approximately three to four rounds of his weapon at Brown. Scherrey believes that if he had not acted at that time, Brown would have shot and killed him.

As Scherrey began firing his weapon, Brown began running away, moving from Scherrey's right to his left at a slight angle. According to Scherrey, the entire time Brown was running, he was also pointing his handgun in Scherrey's direction. At that point, Scherrey did not know if Brown had been shot, and he crossed a small fence in an attempt to pursue Brown while keeping visual contact with him. Approximately twenty yards from the residence, Scherrey came upon Brown in dark clothing lying in the grass. Brown was bleeding from what appeared to Scherrey as a single gunshot wound underneath his arm.

Scherrey placed handcuffs on Brown and advised Communications to start MEMS and a rescue unit. Scherrey then retraced his steps and found a handgun in close proximity with Brown along with an orange ski mask. Scherrey unloaded the gun and saw several live rounds and at least two empty shell casings. From the time Scherrey arrived at the house until the time he requested MEMS and a rescue unit, approximately one minute and fifteen seconds had elapsed.

According to the medical examiner, the bullet that killed Brown entered on the upper lateral left back, just posterior to the axillary region. The entrance wound was located thirteen inches below the top of the head and seven inches to the left of the posterior midline. To state it differently, the bullet entered immediately behind and slightly below the left armpit. It passed through the left fifth rib and into the chest cavity. The bullet punctured both of Brown's lungs and the main pulmonary artery. It came to rest in the upper anterior right chest, at a point thirteen inches below the top of the head and four inches to the right of the anterior midline. The direction of travel was left to right and

back to front, with no significant upward to downward deviation.

### III.

In *Sinclair v. City of Des Moines*, 268 F.3d 594 (8th Cir. 2001), the Eighth Circuit affirmed summary judgment based on qualified immunity when officers responded to a report of assault and used deadly force when they were confronted by a man who pointed a gun at them. The court explained:

> The district court properly granted summary judgment to the officers after considering the qualified immunity question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *See Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001) (holding that in excessive force cases, the question of qualified immunity must be the initial inquiry and, in resolving this question, the district court must specifically consider the facts alleged). Here the district court properly concluded that no constitutional or statutory right exists that would prohibit a police officer from using deadly force when faced with an apparently loaded weapon. As the Supreme Court has explicitly said, use of deadly force is permissible when the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 3, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985). Accordingly, the district court did not err.
>
> Because the police officers are absolved of liability, the City cannot be held liable for their actions. *See Veneklase v. City of Fargo*, 248 F.3d 738, 748 (8th Cir. 2001) (en banc). *See also Olinger v. Larson*, 134 F.3d 1362, 1367 (8th Cir. 1998) ("The City cannot be liable . . . whether on a failure to train theory or a municipal custom or policy theory, unless [an officer] is found liable on the underlying substantive claim." (quoting *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994))). The district court did not err in granting summary judgment for the City.
>
> We further conclude that the district court did not err in dismissing Sinclair's negligence, negligence per se, and assault claims against the officers on the merits. There is nothing in the record to support the contention that Officer McBride caused Clark's death. Officer McBride did not fire the gun, nor did any of his actions lead to Clark's death. With regard to Officer Peak, the record indicates that reasonable jurors would necessarily conclude that Officer Peak acted as a reasonable, prudent officer under the circumstances that faced him as Clark opened the door to the apartment with a weapon in his hands. *See Ribbey v. Cox*, 222 F.3d 1040, 1043 (8th

Cir. 2000) (citing *Tennessee v. Garner*, 471 U.S. at 3, 105 S. Ct. 1694). *Sinclair*, 268 F.3d at 596.

*Sinclair* disposes of all of the issues in this case. Scherrey was faced with an apparently loaded weapon. Scherrey had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to him and to others. Accordingly, Scherrey is immune from suit. Furthermore, because the police officers are absolved of liability, the City cannot be held liable for their actions.[1] Summary judgment on Brown's state-law claims for negligence and wrongful death must be granted because Ball did not cause Terren Brown's death and there is no evidence from which a reasonable jury could find that Scherrey failed to act as a reasonable, prudent officer under the circumstances that faced him when he was suddenly confronted by a man pointing a gun at him.

Brown argues that the jury should be allowed to assess the officers' credibility. To overcome a motion for summary judgment on the issue of credibility, the nonmoving party must do more than simply attack the credibility of the defendant-affiants. The Eighth Circuit has held that, in a summary judgment context, for "an affiant's credibility [to be] put in issue by a litigant, . . . specific facts must be properly produced." *Lundeen v. Cordner*, 354 F.2d 401, 409 (8th Cir. 1966). Additionally, "if the defendant-official has made a properly supported motion [for summary judgment], the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden . . . ." *Crawford-El v. Britton*, 523 U.S. 574, 600, 118 S. Ct. 1584, 1598, 140 L. Ed. 2d 759 (1998) (footnote omitted); *see also Hernandez v. Jarman*, 340 F.3d

---

[1] In any event, there is no evidence that the officers lacked training or that the City has an unconstitutional custom or practice.

617, 622 (8th Cir. 2003) ("While we are mindful that this case is somewhat unusual in that [the police officers] are the only surviving witnesses, that does not relieve [the plaintiff] of her burden of showing that material facts are in dispute."). Here, Brown has attacked the credibility of the defendants without producing any affirmative evidence.

Brown also argues that Scherrey shot Terren Brown in the back, but that is not really what the autopsy report shows. The autopsy report shows that Terren Brown's side was turned to Scherrey when the fatal shot was fired. The autopsy report is not inconsistent with Scherrey's affidavit, which states that Terren Brown was pointing his gun at Scherrey when Scherrey fired. Again, Brown attacks Scherrey's credibility, but he offers nothing to show that there is a genuine issue of material fact.

## CONCLUSION

For the reasons stated in this opinion and order, defendants' motion for summary judgment is granted. Document #19.

IT IS SO ORDERED this 20th day of November, 2006.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE